1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                     FOR THE DISTRICT OF IDAHO

9                        ----oo0oo----

10   MARK S. WICKLUND, an individual,
                                        NO. CIV. 1:10-341 WBS
11            Plaintiff,

12        v.                            MEMORANDUM AND ORDER GRANTING
                                        MOTION FOR SUMMARY JUDGMENT
13   PAMELA HUNTSMAN, an individual,
     THOMAS HEARN, an individual,
14   GARY O. HORTON, an individual,
     MOSCELENE SUNDERLAND, an
15   individual, and KATHY BAIRD, an
     individual, and SEXUAL OFFENDER
16   CLASSIFICATION BOARD,

17            Defendants.

18   _____/

19
                         ----oo0oo----
20

21        Plaintiff Mark Wicklund brought this 42 U.S.C. § 1983

22   action against defendants Pamela Huntsman, Thomas Hearn, Gary

23   Horton, Moscelene Sunderland, Kathy Baird, and the Sexual

24   Offender Classification Board ("SOCB" or "Board") arising out of

25   defendants' alleged violation of plaintiff's right to due

26   process.  Presently before this court is defendants' motion for

27   summary judgment pursuant to Federal Rule of Civil Procedure 56.

28   I.   Factual and Procedural Background

                              1

1    Plaintiff has been convicted of multiple sexual
2    offenses in multiple states.  (Baird Aff. Ex. 4 at 103, 178-314;
3    Ex. 3.)  Plaintiff was referred to the SOCB to determine whether
4    he qualified as a "violent sexual predator" ("VSP") after
5    violating his parole as to a 2001 conviction.  (Id. at Ex. 4,
6    SOCB 169-71.)  Plaintiff was notified that the SOCB designated
7    him as VSP in a notice dated April 25, 2008.

8    Defendants Huntsman, Hearn, Horton, and Sunderland were
9    members of the SOCB when plaintiff's VSP determination was made.
10   Baird served as secretary for the SOCB, but was not an SOCB
11   member.  Baird claims that she did not participate in the
12   decision to categorize plaintiff as a VSP.  (Id. ¶ 5.)

13   Plaintiff's VSP designation was conducted pursuant to
14   the Sexual Offender Registration Notification and Community
15   Right-to-Know Act ("Act"), Idaho Code Ann. § 18-8301 (2008),
16   invalidated by Smith v. State, 146 Idaho 822 (2009).  A VSP was
17   defined as "a person who has been convicted of an offense listed
18   in section 18-8314, Idaho Code, and who has been determined to
19   pose a high risk of committing an offense or engaging in
20   predatory sexual conduct."  Id. § 18-8303(15).  The Act described
21   various factors that the SOCB could consider in making its
22   determination, id. § 18-8314(5)(b), but regardless of the
23   guideline, an offender could be designated a VSP based on a
24   determination that the offender intends to reoffend, id. § 18-
25   8314(6).

26   On February 10, 2009, the Idaho Supreme Court held in
27   Smith v. State that there were "significant constitutional
28   shortcomings in the statutory procedure [for determining VSP

2

status] . . . ." <u>Smith</u>, 146 Idaho at 827.  As a result of the decision in <u>Smith</u>, the state district court issued an order on April 3, 2009, vacating plaintiff's VSP designation.  <u>See</u> <u>Order Vacating VSP Designation & Remand</u>, No. CV OC 2008-08265 (Ada Cnty. Dist. Ct. Apr. 3, 2009).  Plaintiff alleges that, following the order, the SOCB meeting minutes indicating that plaintiff was a VSP remained public and available on the internet.  (Compl. ¶ 27.)

In October 2009, pursuant to plaintiff's request, the SOCB amended their meeting notes regarding plaintiff's designation to read:

> Probationer Mark Wicklund, #64908 was designated a violent sexual predator.
> Amendment: This designation was vacated pursuant to the court's order in Ada County Case No. CV OC 2008-08265.

(Baird Aff. ¶ 9, Ex. 9.)  Plaintiff alleges that the amended meeting notes were not published to the internet until February 2010, and that the amended version of the notes continues to stigmatize him.  (Compl. ¶¶ 30, 31.)

Plaintiff filed his Complaint in this case on July 6, 2010, alleging claims under 42 U.S.C. § 1983.  (Docket No. 1.) Plaintiff alleges that defendants violated "his due process rights by designating him a [VSP] without granting him the opportunity to participate or otherwise defend himself in the process."  (<u>Id.</u> ¶ 37.)  Defendants now move for summary judgment on the grounds that plaintiff's claims are untimely; plaintiff's claim against the SOCB and his official capacity claims against the individual defendants are barred by the Eleventh Amendment; defendants are not subject to § 1983 liability; plaintiff's claim

1  is barred by the <u>Rooker-Feldman</u> doctrine; defendants are entitled

2  to absolute and qualified immunity; and plaintiff fails to plead

3  facts supporting his claim for stigma damages.[1]

4  II.  <u>Discussion</u>

5          Summary judgment is proper "if the movant shows that

6  there is no genuine dispute as to any material fact and the

7  movant is entitled to judgment as a matter of law."  Fed. R. Civ.

8  P. 56(a).  A material fact is one that could affect the outcome

9  of the suit, and a genuine issue is one that could permit a

10  reasonable jury to enter a verdict in the non-moving party's

11  favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

12  (1986).  The party moving for summary judgment bears the initial

13  burden of establishing the absence of a genuine issue of material

14  fact and can satisfy this burden by presenting evidence that

15  negates an essential element of the non-moving party's case.

16  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

17  Alternatively, the moving party can demonstrate that the

18  non-moving party cannot produce evidence to support an essential

19  element upon which it will bear the burden of proof at trial.

20  <u>Id.</u>

21          Once the moving party meets its initial burden, the

22  burden shifts to the non-moving party to "designate 'specific

23  facts showing that there is a genuine issue for trial.'"  <u>Id.</u> at

24  324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden,

25  the non-moving party must "do more than simply show that there is

26

27          [1]   Plaintiff has agreed to dismiss his claims against
    defendants SOCB and Baird.  (Pl.'s Resp. to Mot. for Summ. J. at
28  7.)

4

1   some metaphysical doubt as to the material facts." <u>Matsushita</u>

2   <u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

3   "The mere existence of a scintilla of evidence . . . will be

4   insufficient; there must be evidence on which the jury could

5   reasonably find for the [non-moving party]." <u>Anderson</u>, 477 U.S.

6   at 252.

7        In deciding a summary judgment motion, the court must

8   view the evidence in the light most favorable to the non-moving

9   party and draw all justifiable inferences in its favor. <u>Id.</u> at

10  255. "Credibility determinations, the weighing of the evidence,

11  and the drawing of legitimate inferences from the facts are jury

12  functions, not those of a judge . . . ruling on a motion for

13  summary judgment . . . ." <u>Id.</u>

14      A.   <u>Absolute Immunity</u>

15       Defendants contend that they are entitled to absolute

16  judicial immunity because they perform quasi-judicial functions

17  as members of the SOCB.  Plaintiff concedes that defendants are

18  "entitled to absolute immunity as their actions meet the

19  definition of quasi-judicial functions." (Pl.'s Resp. to Defs.'

20  Mot. for Summ. J. at 5.)  Instead, plaintiff argues that the case

21  law surrounding quasi-judicial immunity "is ripe to be overturned

22  and/or further limited." <u>Id.</u>

23       It is well-established that judges and those performing

24  judge-like functions are <u>absolutely immune</u> from damage liability

25  for acts performed in their official capacities. <u>Stump v.</u>

26  <u>Sparkman</u>, 435 U.S. 349, 355-56 (1978); <u>Ashelman v. Pope</u>, 793 F.2d

27  1072, 1075 (9th Cir. 1986).  "[C]ourts have extended the

28  protections of absolute immunity to qualifying state officials

1  sued under 42 U.S.C. § 1983." Olsen v. Idaho State Bd. of Med.,

2  363 F.3d 916, 923 (9th Cir. 2004).  "The determination of

3  immunity is a question of law." Id. at 921.

4         "Absolute immunity flows not from rank or title . . .

5  but from the nature of the responsibilities of the individual

6  official." Cleavinger v. Saxner, 474 U.S. 193, 201 (1985).  The

7  Supreme Court has developed the "functional approach" in

8  determining if immunity is appropriate. Olsen, 393 F.3d at 923.

9  The court "must consider whether the actions taken by the

10 official are 'functionally comparable' to that of a judge or a

11 prosecutor." Id.  Such activities are referred to as quasi-

12 judicial. See Miller v. Davis, 521 F.3d 1142, 1145 (9th Cir.

13 2008).  The United States Supreme Court has outlined several

14 factors that are characteristic of judicial decisionmaking under

15 the functional approach:

16    (1) the need to insulate the official from harassment or
      intimidation; (2) the presence of procedural safeguards
17    to reduce unconstitutional conduct; (3) insulation from
      political influence; (4) the importance of precedent in
18    the official's decision; (5) the adversary nature of the
      process; and (6) the correctability of error on appeal.
19

20 Id. at 1145 (citing Cleavinger, 474 U.S. at 202).  "This list of

21 factors is nonexhaustive, however, and an official need not

22 satisfy every factor to be entitled to absolute quasi-judicial

23 immunity." Id.

24         The factual allegations against defendants concern only

25 their role as official decisionmakers on the SOCB.  This role

26 bears significant resemblance to the decisionmaking conducted by

27 parole board officers, for which the parole board officers are

28 entitled to absolute judicial immunity. See Sellers v.

1  <u>Procunier</u>, 641 F.2d 1295, 1303 (9th Cir. 1981) (holding that
2  parole board members are entitled to absolute immunity); <u>Miller</u>,
3  521 F.3d at 1145-46 (holding that the governor's review of parole
4  board decisions is entitled to absolute immunity); <u>see also</u>
5  <u>Stafford v. Powers</u>, No. 10-35356, 2011 WL 3585621, at *1 (9th
6  Cir. Aug. 16, 2011) (holding that parole board members are
7  entitled to absolute immunity for their decision to designate an
8  individual as a predatory sex offender without an evidentiary
9  hearing).

10           i.    <u>The Need to Insulate the Official from Harassment</u>
11                 <u>or Intimidation</u>

12           As members of the SOCB, defendants were charged with
13  "determin[ing] whether the offender should be designated as a
14  violent sexual predator presenting a high risk of reoffense."
15  Idaho Code Ann. § 18-8314(1) (2008).  If individual board members
16  were subject to suit by every disgruntled sexual offender who
17  came before the SOCB, the Board's functioning would have been
18  significantly impaired.  Just as with judges or parole board
19  members, if Board members knew they could be dragged into court
20  over each VSP designation, "there is the same danger that the
21  decision-maker might not impartially adjudicate the often
22  difficult cases that come before them."  <u>Sellers</u>, 641 F.2d at
23  1303.

24           ii.   <u>The Presence of Procedural Safeguards to Reduce</u>
25                 <u>Unconstitutional Conduct</u>

26           The Idaho statute establishing the SOCB requires the
27  Board to promulgate and use "guidelines to determine whether an
28  offender who meets the criteria of this section is a violent

                                7

sexual predator presenting a high risk of reoffense."  Idaho Code Ann. § 18-8314(5) (2008).  The Board was also required to make written findings that included the Board's risk assessment, the basis for the risk assessment, the Board's determination, and the basis for the determination.  See id. § 18-8314(5)(b).  Consistent with the Idaho statute, the Board promulgated rules to determine if an offender's "risk of re-offending sexually or threat of violence is of a sufficient concern to warrant the [VSP] designation for the safety of the community."  Smith, 146 Idaho at 826.  To make this determination, the Board "assess[ed] how biological, psychological, and situational factors, may cause or contribute to the offender's sexual behavior."  Id.  Following the Board's determination, it was required to provide the offender with notice of the proceeding's outcome.  Idaho Code Ann. § 18-8319(1) (2008).  The procedural safeguards governing the Board's determinations, including the requirement to make written findings, closely resembles judicial decisionmaking.

### iii. Insulation from Political Influence

Defendants were appointed by the governor by and with the advice and consent of the Idaho Senate.  Id. § 18-8312(1).  Board members could only be removed "for reasons of inefficiency, neglect of duty, malfeasance in office, commission of a felony or inability to perform the duties of office."  Id. § 18-8313.  The SOCB thus was insulated from political influence because individual Board members could not be removed at will.

### iv. The Importance of Precedent in the Official's Decision

While defendants do not argue that the SOCB was

8

1  required to consider precedent, it does appear that the Board was

2  required to consider the application of its promulgated rules in

3  making its determination as to an individual's VSP status.  This

4  suggests that defendants were indeed required to consider

5  precedent in reaching their decisions.

6             v.   The Adversary Nature of the Process

7             The SOCB procedures were not adversarial in nature as

8  offenders are not invited to participate in the proceedings.

9             vi.   The Correctability of Error on Appeal

10            The SOCB was required to provide the offender notice of

11 its determination.  Id. § 18-8319(1).  An offender was then able

12 to challenge the VSP designation by judicial review.  Id. § 18-

13 8319(a); Lichtner v. Idaho, 142 Idaho 324, 326 (Ct. App. 2005)

14 ("An offender's challenge to being designated as a VSP initiates

15 a 'nonadversarial' proceeding which is civil and remedial in

16 nature.").  The Idaho Supreme Court noted in Smith that this

17 review process was imperfect and violated offenders' procedural

18 due process rights because "the offender is provided only a

19 summary of the information considered by the Board, presenting

20 little meaningful opportunity to respond to specific information

21 considered by the Board."  Smith, 146 Idaho at 830.  Despite this

22 problem, errors by the SOCB were subject to judicial review and

23 were correctable on appeal.  Id. at 1226-29.

24            The need to insulate Board members from harassment, the

25 statutorily imposed procedural safeguards, the Board's political

26 independence, the importance of precedent, and the availability

27 of judicial review all functionally resemble judicial

28 decisionmaking.  Board members' determinations of offenders' VSP

status "shares enough of the characteristics of the judicial process," Butz, 438 U.S. at 513, to warrant absolute quasi-judicial immunity.

Despite the fact that defendants are entitled to absolute immunity, plaintiff urges this court to overturn or narrow the scope of the existing case law.  First, plaintiff argues that current case law on absolute immunity should be overturned because it ignores the fact that "[s]imply because a choice involves discretion does not mean it is a judicial act." (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 6.)  Plaintiff's contention oversimplifies the absolute immunity jurisprudence -- discretion alone is not determinative of whether a decision is quasi-judicial, rather courts apply a "functional approach" to distinguish whether an action is comparable to those taken by judges.  Olsen, 393 F.3d at 923.  Plaintiff argues that in the Board's work classifying individuals, they "act[ed] more [as] psychologists or mental health professionals than judges" and were not engaged in factfinding.  (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 5.)  The fact that SOCB members are exercising their professional judgments as mental health professionals is not determinative, as professional judgment is often required by judges and prosecutors in their decisionmaking.

Second, plaintiff argues that his VSP designation, and the Board's actions generally, violate his Sixth Amendment right to have findings of fact made by a jury.[2]  (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 6.)  Plaintiff fails to address how this is

---

[2]   Plaintiff's has not alleged a § 1983 claim based on a violation of his Sixth Amendment right to a jury trial.

relevant to absolute immunity.  This argument directly
contradicts plaintiff's contention above that the SOCB was not
engaged in factfinding, by contending that Board's determination
was based on factfinding that should have been done by a jury.
Furthermore, plaintiff's reliance on Ring v. Arizona, 536 U.S.
584 (2002), and Apprendi v. New Jersey, 530 U.S. 466 (2000), is
misplaced because those cases dealt with non-jury factfinding
being used to expose the defendant to a higher penalties under
federal sentencing guidelines.  In other words, the decisions in
Ring and Apprendi objected to the punitive nature of the
determination.  Sexual offender registration laws have previously
been upheld as both nonpunitive and not violations of the Ex Post
Facto clause.  Smith v. Doe, 538 U.S. 84, 105-06 (2003); Hatton
v. Bonner, 356 F.3d 955, 961-67 (9th Cir. 2004).  The SOCB does
not determine if an offender should be registered as a sexual
offender, it determines whether the offender should be registered
at a higher classification as a VSP.  Offenders classified as VSP
must update their registration more often than non-VSP sexual
offenders, but it is still a nonpunitive registration
requirement.

          Finally, plaintiff "asks this Court to carve out an
exception from current case law for instances where agencies act
outside a proper delegation of judicial authority."  (Pl.'s Resp.
to Defs.' Mot. for Summ. J. at 6.)  There is no need to carve out
a new exception, as such an exception already exists in the case
law.  See Stump v. Sparkman, 435 U.S. 349, 349-50 (1978) ("A
judge will not be deprived of immunity because the action he took
was in error, was done maliciously, or was in excess of his

11

1  authority, but rather he will be subject to liability only when
2  he has acted in the 'clear absence of all jurisdiction.'"
3  (quoting Bradley v. Fisher, 80 U.S. 335, 351 (1871))).  In this
4  case, however, plaintiff does not claim that defendants' action
5  exceeded their delegation of authority from the legislature.  To
6  the contrary, plaintiff argues that defendants acted pursuant to
7  that delegation, and it is the delegation which he contends was
8  unconstitutional.  This is not a case where it can be argued that
9  defendants acted in the clear absence of all jurisdiction.

10          Plaintiff's arguments for overturning existing
11 precedent are not compelling.  This court is bound to follow the
12 precedent established by the Ninth Circuit Court of Appeals and
13 the United States Supreme Court.  Accordingly, because defendants
14 are entitled to absolute immunity, the court will grant
15 defendants' motion for summary judgment.

16      B.   Remaining Summary Judgment Arguments

17          Because the court will grant defendants' motion for
18 summary judgment on absolute immunity grounds, it need not
19 address defendants' other arguments.

20          IT IS THEREFORE ORDERED that defendants' motion for
21 summary judgment be, and the same hereby is, GRANTED.

22 DATED:  October 28, 2011

24 _____
   WILLIAM B. SHUBB
25 UNITED STATES DISTRICT JUDGE

12